**UNITED STATES of America, Appellee,**

v.

**Angelo MAMONE, Defendant-Appellant.**

**No. 247, Docket 76–1295.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 29, 1976.

Decided Oct. 21, 1976.

Robert L. Ellis, New York City, for defendant-appellant.

Thomas M. Fortuin, Asst. U. S. Atty., New York City (Daniel R. Murdock, Chief Asst. U. S. Atty., S. D. N. Y., Thomas E. Engel and Lawrence B. Pedowitz, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before FEINBERG and VAN GRAAFEILAND, Circuit Judges, and MOTLEY, District Judge.*

FEINBERG, Circuit Judge:

Angelo Mamone appeals from an order of Judge Kevin T. Duffy, entered in the United States District Court for the Southern District of New York, denying Mamone's motion for a new trial under Fed.R.Crim.P. 33. After a long jury trial in 1974, Mamone and 14 co-defendants were convicted of conspiring to violate the narcotics laws. A co-defendant in that trial, Joseph Marchese, was acquitted by the judge. The basis of Mamone's Rule 33 motion is that Mamone's constitutional rights "may have been violated" by Marchese's "surreptitious intrusion," as an informer, into strategy sessions of the various defendants, including Mamone. After first starting, and then terminating, an evidentiary hearing, Judge Duffy denied the motion in a memorandum opinion, without prejudice to renewal upon "a proper minimum showing" of facts to support the charge. Although various co-defendants tried with Mamone joined in his motion, only Mamone appeals from the judge's ruling. For reasons set forth below, we affirm.

I.

The facts of the conspiracy for which Mamone was convicted are set forth at length in Judge Oakes's exhaustive opinion in *United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975).[1] We need not recount them again, in view of the limited claims now made to us. These are that Judge Duffy erred in denying Mamone's motion without a full evidentiary hearing and in accepting an ex parte affidavit, accompanied by exhibits, and a memorandum of law from the Government, which were sealed and which appellant's counsel has apparently still not seen. To evaluate these claims, a brief statement of what occurred in the district court on the Rule 33 motion is necessary.

Without reference to the sealed material, the record before Judge Duffy was comparatively sparse. It consisted of three affidavits by Mamone's attorney and accompanying exhibits, affidavits from three government attorneys,[2] and the testimony of Walter M. Phillips, Jr., who had been Chief of

---

\* Of the United States District Court for the Southern District of New York, sitting by designation.

1. Certiorari was subsequently denied. 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

2. These were Paul J. Curran, United States Attorney at the time of the *Tramunti* trial, and Thomas E. Engel and Thomas M. Fortuin, the Assistant United States Attorneys who, along with Walter M. Phillips, Jr., participated in the *Tramunti* prosecution.

the Narcotics Unit in the United States Attorney's office at the time of the trial. Phillips testified at the hearing before Judge Duffy; the hearing was then adjourned until the Government produced its "informer" file on Marchese for *in camera* examination by the judge. When the Government did so, it also moved to deny Mamone's motion without a further evidentiary hearing.

At that point, exclusive of the sealed material, the record indicated the following: A few facts were undisputed. Marchese had been acquitted at the *Tramunti* trial. Also, he had acted in 1971 as an informant for the New York Drug Enforcement (DEA) Task Force and had arranged a drug sale which resulted in the conviction of one Willie Lee Knight in 1972 in the United States District Court for the Central District of California. This conviction was reversed by the United States Court of Appeals for the Ninth Circuit. Marchese was scheduled to testify in a retrial of Knight shortly after Mamone's conviction in the *Tramunti* trial, but at the last minute the parties in the *Knight* case stipulated to Marchese's testimony.

In addition to these admitted facts, the other factual assertions in the various affidavits of Mamone's counsel were as follows: Marchese, either personally or through his attorneys, participated in defense strategy meetings. The agents who supervised Marchese's activities in the *Knight* case also testified in the *Tramunti* trial about the seizure from two co-conspirators of nearly one million dollars in cash. Press reports at the time of the arrest of the many defendants in the *Tramunti* prosecution stated that the code name for the investigation was "Shamrock," and Marchese operated a cab company called "Shamrock Cabs." And, "an obviously frightened and recalcitrant Marchese," when interviewed by Mamone's counsel, said that he was questioned before trial by the Government about the other defendants in the *Tramunti* case, was told by Phillips that he would receive cash, a home and a new identity if he cooperated,

was told by Phillips to contact Agent Shutes of the DEA if he had anything to report to Phillips, was asked during trial by Shutes how the defendants were treating him and was otherwise "questioned," and was forbidden at an earlier stage of the *Knight* retrial proceedings to go to California to testify.

As against this, then United States Attorney Curran swore in his affidavit:

I have discussed this matter with the Assistant United States Attorneys who participated with me in the prosecution of this case. None of us and no member of the United States Attorney's Office has any knowledge whatsoever that the defendant Joseph Marchese cooperated in any way or form with the Government in this case. During the course of the trial, the Government received no information either from Marchese or from any other source concerning any conversations between defendants and their attorneys or with respect to any defense tactics.

Marchese was a *bona fide* defendant in this case. The Government proceeded against Marchese exactly as it proceeded against the other defendants. It was the Government's hope from the time of the indictment that Mr. Marchese would be convicted in this case. I argued as strenuously as I could in opposition to the defendant Marchese's motion for a directed judgment of acquittal both at the end of the Government's case and at the end of all the evidence. At those times, I took the position, which was an honest one, that, with complete respect for the Court's ultimate ruling, there was indeed sufficient evidence against Marchese to submit the case against him to the jury.

The affidavits of Engel and Fortuin similarly each swore that from the time they became Assistants to the date of the verdict:

I had no communication with Joseph Marchese other than an occasional exchange of greetings. At no time during this period did anyone relate to me any conversations they had had with

Marchese, nor did I receive any message whatsoever from him, directly or indirectly.

In addition, at the aborted hearing before Judge Duffy, Phillips testified that in October 1973 he had attempted to get Marchese to give information and testify with respect to the defendants named in the *Tramunti* indictment, but that Marchese had refused. Phillips could recall no further personal conversations with Marchese or any message from him through anyone else. Finally, Mamone's moving papers conceded that "we have no knowledge that Marchese actually transmitted defense information to the government," and that when interviewed by Mamone's counsel, Marchese "denied acting as an informant in this case."

In May 1976, the judge denied Mamone's motion for a new trial, in an opinion already referred to.

## II.

On this record, we hold that Judge Duffy did not commit error in denying the motion for a new trial "without prejudice" to its renewal on a more solid factual basis. It is true that we have treated with the utmost seriousness charges that the Government has planted, or benefited from, a spy in the camp of defense counsel. E. g., *United States v. Arroyo*, 494 F.2d 1316, 1321–23 (2d Cir.), *cert. denied*, 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974); *United States v. Rosner*, 485 F.2d 1213, 1223–28 (2d Cir. 1973), *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); *United States v. Mosca*, 475 F.2d 1052, 1060–61 (2d Cir.), *cert. denied*, 412 U.S. 948, 93 S.Ct. 3003, 37 L.Ed.2d 1001 (1973). But those cases point up the factual inadequacy of the claim here.

In *Arroyo*, the defendant's undisputed showing that a mistakenly indicted co-defendant was really a government informer all along was insufficient because there was no indication that confidential matters actually reached the prosecutors. In *Rosner* also, we refused to grant a new trial even though a co-defendant concededly cooperated with the Government before participating in a pre-trial strategy discussion with the defendant and his counsel, because the defendant presented no evidence that the cooperating co-defendant passed any confidential information to the prosecutors. And in *Mosca*, one co-defendant continued to confer with the other defendants after he began to cooperate with the Government, but we upheld the denial of a new trial because the other defendants had not been prejudiced. It is true that in these cases, the trial judge held an evidentiary hearing on defendant's charge of improper governmental "intrusion," and Mamone seeks at this point only a full hearing.[3] But in each, it was either conceded or otherwise clear that the alleged spy had been actually cooperating with the Government in the case of the defendant then on trial.

In contrast, each of the government attorneys involved in the prosecution of Mamone denied under oath the receipt of any information from Marchese. The only hard facts offered by Mamone as justifying a contrary inference are that Marchese had been an informant in another drug case and was apparently still willing to testify as to that matter at about the time Mamone's trial took place, and that Marchese was acquitted at the Mamone trial.[4] But it does not at all follow that because Marchese was an informer in one case, he must have acted as a spy for the Government in another.[5]

3. The hearing in *Rosner* was on a post-trial motion. The hearings in *Arroyo* and *Mosca* were apparently held at the outset of, or during, trial.

4. We do not regard as weighty the claimed coincidence of the name "Shamrock." Similarly, the conversations with Phillips or Shutes were either consistent with the Government's denials here or sufficiently vague as to be of little probative value. Finally, the limited involvement in the *Tramunti* case of certain agents, who allegedly supervised Marchese's "cooperation" in the *Knight* case, was not significant enough to require a further hearing.

5. Cf. *United States v. Koss*, 506 F.2d 1103, 1110–12 (2d Cir. 1974), *cert. denied*, 420 U.S. 977, 95 S.Ct. 1402, 43 L.Ed.2d 657 (1975); *United States v. Huss*, 482 F.2d 38 (2d Cir. 1973).

In addition, the judge's acquittal of Marchese is not sufficient to justify the inference that Marchese was a sham defendant. The Curran affidavit swore that the Government proceeded against Marchese exactly as it did against the other defendants. More importantly, the judge noted in his opinion in denying Mamone's Rule 33 motion:

> The government voiced strong opposition to [Marchese's motion for acquittal]. Based solely on an analysis of the evidence produced against Marchese, I directed the entry of a judgment of acquittal as to him.

Finally, Mamone conceded that he had no knowledge that Marchese actually transmitted defense information to the Government. Marchese himself was interviewed and denied it.

Under the circumstances, we doubt that there was enough of a showing to warrant a hearing at all. Certainly, therefore, terminating the hearing after Phillips testified and then denying the motion for a new trial was not erroneous. The charge made here is a grave one, but on the record it was properly rejected.

On this view of the case, we do not find it necessary to consider the arguments addressed to the judge's consideration of the sealed material, upon which we have not relied.

Judgment affirmed.